# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4070 | **DATE** | 5/31/2001 |
| **CASE TITLE** | Robert Lee etal vs. Phillips Petroleum Company | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendant's motion for summary judgment is hereby denied (#12). Enter Memorandum Opinion and Order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 3 1 2001 | 27 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| AC6 | courtroom deputy's initials | EO-7 FILED FOR DOCKETING 01 MAY 31 PM 3: 00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LEE and NANJEAN LEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 00 C 4070 **DOCKETED** |
| | ) | |
| PHILLIPS PETROLEUM COMPANY, | ) | **MAY 3 1 2001** |
| | ) | |
| Defendant. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for
Summary Judgment pursuant to Federal Rule of Civil Procedure
56. Plaintiffs, Robert Lee and Nanjean Lee, sued Defendant
Phillips Petroleum Company ("Phillips") for negligence and
loss of consortium, after Robert Lee slipped and fell on the
tile inside the entrance door to a Defendant-owned gasoline
station/convenience market. Phillips contends, *inter alia*,
that it cannot be held liable for Mr. Lee's injuries, because
Plaintiffs cannot prove proximate cause – a necessary element
of negligence – and because a landowner is not liable for
injuries resulting from natural accumulations of substances,
such as water, on its premises. Because the Court finds that
there are material facts in dispute concerning whether

Phillip's premises were unreasonably dangerous, and for the reasons set forth below, the Court denies Defendant's Motion.

## FACTUAL BACKGROUND

Phillips operated a gas station/convenience store located at 108 North Batavia Avenue, Batavia, Kane County, Illinois (hereinafter referred to as the "premises"). (Plaintiff's Statement of Additional Material Facts ("Pl's SMF") at ¶ 1.) On January 4, 1999, Plaintiff Robert Lee slipped and fell when he entered the premises in order to purchase a newspaper. As he was entering, his feet came into contact with the tile used on a portion of the store's floor, and his left foot rolled over. (Deposition of Robert Lee ("DRL") at 46-47.)

The entrance to the store premises was gained through two side by side doors. After the threshold of the door, there was about 11½ inches of tile floor, and then there was a recessed mat, otherwise referred to as a "peditred", in the floor. (Pl's SMF at ¶¶ 7-8.) After Plaintiff placed his left foot down on the tile floor, in between the threshold and the peditred, he slipped, came up against the peditred, rolled his left ankle over, and fell forward. He landed partially on the peditred and partially on the tile on the far side of the peditred. (DRL at 47-49.) Plaintiff's feet did not touch or come in contact with the peditred prior to his fall. (DRL at

45-46.) After his fall, someone helped Plaintiff to his feet, and, then, a Phillips employee brought Plaintiff a chair, while he waited for an ambulance. This same employee then proceeded to mop up water on the tile between the threshold and the peditred. (DRL at 52-55.) Plaintiff testified that after he fell, his left side and his lower back were wet. (DRL at 51.) An ambulance arrived and Plaintiff was taken to a local hospital. (DRL at 55-57.) Plaintiff underwent surgery on his left ankle, which included the insertion of seven screws and a plate into his left ankle. (DRL at 60-63.)

Phillips employee, Jacoby Richardson, worked behind the counter at the store premises from sometime in 1998 to early 1999. (Deposition of Jacoby Richardson ("DJR") at 7.) During the time he worked at the store, Mr. Richardson testified that, in bad weather, Phillips usually had a runner, (a long mat-like rug), that ran from the entrance of the store to the counter. (DJR at 30-33.) Another Phillips employee, Kimberly Walls, worked at the store premises both before and on the day of Mr. Lee's fall. (Deposition of Kimberly Walls ("DKW") at 6-8.) According to Ms. Walls, she was instructed to put out yellow triangular caution signs in the store whenever the floors were wet, including wetness due to tracked in

moisture.[1] (DKW at 17.) Ms. Walls remembers that, except for temporary displacement during mopping, two runners were always in place in the store, extending from the threshold over the tile and over the peditred into the store. (DKW at 14-17.)[2]

## PROCEDURAL HISTORY

Plaintiffs, Robert Lee and Nanjean Lee, filed a two-count Complaint against Defendant Phillips on February 22, 2000. Count I alleges that Mr. Lee's injuries occurred as a direct and proximate result of Defendant's negligent conduct. Count II, brought by Mr. Lee's wife, is for loss of consortium. Defendant filed an answer to Plaintiffs' Complaint on April 27, 2000. On February 2, 2001, Defendant filed its Motion for Summary Judgment on both counts and its Statement of Material Facts. On March 8, 2001, Plaintiffs filed an Opposition to Defendant's Motion for Summary Judgment ("Opposition Motion")

---

[1] Apparently, it had snowed during the evening, January 3rd, and during the early morning of January 4th. It was no longer snowing when Mr. Lee entered the premises, shortly after 6:00 AM, on January 4th. (DRL at 37-38.)

[2] One factual issue in dispute concerns whether the yellow caution signs and runners were in place on the day of the accident. While Ms. Walls testified in her deposition that the caution signs and runners were in place on January 4, 1999, (DKW at 14-18), Mr. Lee disagrees. (DRL at 50.) Although an accident report was completed shortly after the accident, and pictures of the store premises were taken, both the report and the pictures cannot be located. (DKW at 27-34.)

and a Response to Defendant's Statement of Material Facts. Finally, on April 9, 2001, Defendant filed a Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, and a Motion to Strike Eugene Holland's Affidavit.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact, and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating that no evidence exists to support the non-moving party's contentions. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party may not rest on his pleadings, but must affirmatively demonstrate, by specific allegations, that a genuine issue of material fact exists which requires a jury trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (finding that the non-movant must do more than simply "show that there is some metaphysical doubt as to the material facts.") In reviewing a motion for summary judgment, the Court must view the record and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247 (1986). However, the Court is "not required to draw every conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Also, the non-moving party has to "produce more than a scintilla of evidence in support of his position." *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999)(citations omitted).

## B. Law on Premises Liability

The owner of a premises owes a business invitee a duty to exercise ordinary care in maintaining the premises in a reasonably safe condition to avoid injuring them. *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001); *Ward v. K Mart Corp.*, 554 N.E.2d 223, 227 (Ill. App. Ct. 1990). In order for a defendant to be found liable, a plaintiff must prove all elements of a negligence claim: duty, breach, proximate cause, and damages. *Torres v. U.S.*, 953 F. Supp. 1019, 1025 (N.D. Ill. 1997). The duty owed a business invitee is reasonable care under the circumstances. *Id*. A plaintiff is only entitled to recover if he can prove, more probably than not, that a defendant's breach of the duty owed was the proximate cause of the plaintiff's injuries. *Id*. Proximate

cause is that cause which, in natural or probable sequence, produced the injury complained of in a plaintiff's complaint. *Id.* Proximate cause is not established where the causal connection is "contingent, speculative, or merely possible." *Id.*

Under Illinois law, for a plaintiff to survive summary judgment, he must show that a defendant had actual or constructive knowledge of the risk, and, generally, this is a question of fact. *Id.*; *Bloom v. Bistro Restaurant Ltd. Partnership*, 710 N.E.2d 121, 124 (Ill. App. Ct. 1999). If there is evidence of a defect in flooring and slight evidence which associates a plaintiff's fall with that defect, the problem becomes a question for the jury. *Tracy v. Village of Lombard*, 451 N.E.2d 992, 996-97 (Ill. App. Ct. 1983).

Thus, in the case *sub judice*, Defendant had a duty to provide a reasonably safe premises for Mr. Lee. In order to survive summary judgment and to show breach of this duty, Plaintiffs must provide evidence of an unreasonable risk of danger, and evidence of Defendant's constructive knowledge of the risk. Plaintiffs must also provide sufficient evidence to prove proximate cause.

## C. Plaintiff's Theory of Case and Supporting Evidence

Plaintiffs allege that Phillips maintained the entrance

to the store premises in a negligent and dangerous condition in that (1) the peditred was set too far away from the threshold of the door, posing an unreasonable risk of injury; (2) the course of tile flooring material used between the threshold and the peditred was inappropriate and posed an unreasonable risk of slipping; (3) Phillips failed to have in place an additional mat, usually present in wet conditions, to cover the tile between the threshold and the peditred; and (4) Phillips failed to take reasonable steps to prevent business invitees on its premises from slipping on the aforementioned tile, which was a known danger. (Plaintiffs' Complaint at ¶ 3.)

To show unreasonable danger, Plaintiffs rely on expert testimony concerning the location of the peditred and the course of tile used in the flooring. Plaintiffs' expert, Mr. Eugene Holland, opines that the tile used, which showed a borderline tendency between slipperiness and non-slipperiness, and the flat surface of the threshold itself, are hazardous to business invitees. (Affidavit of Eugene Holland ("EH") at Ex. 3.) Mr. Holland also opines that the purpose of the peditred is to collect dirt and water at such entryways, to make the entrance safe, and that, the position of the peditred 11½

inches from the threshold is unreasonably dangerous.[3] (EH at

---

[3] Defendant moves that the Court strike Plaintiffs' expert's testimony as inadmissible. Generally, expert testimony is admissible if (1) the proffered expert is qualified by knowledge, skill, experience, training, or education in a field that has at least a modicum of reliability; and (2) the testimony will tend to assist the jury in understanding the evidence. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 721 N.E.2d 614, 623 (Ill. App. Ct. 1999). In the case *sub judice*, the Court denies Defendant's Motion to Strike Eugene Holland's Affidavit and Report, because Defendant's arguments speak more to the weight of the expert's testimony than to its admissibility. For example, Defendant argues that Mr. Holland does not offer any admissible evidence to support his opinion on the placement of the peditred. However, Mr. Holland's opinion is based, in part, on the peditred manufacturer's suggested installation specifications, which show that "peditreds" should always be placed contiguous with entrances and should not be placed to allow a slippery surface between the entrance and the peditred. Mr. Holland's opinion is also based on more than 37 years of engineering experience, which includes substantial experience in designing, building, and remodeling entrances to commercial buildings, to ensure safety and compliance with governing codes, customs, and practice. Also, Defendant claims that there is no evidence to support Mr. Holland's claim that the tile floor was unsafe and unreasonably dangerous. However, Mr. Holland used an American Society for Testing and Materials ("ASTM") approved slipmeter test, which was admittedly inconclusive, but did show a borderline tendency between slipperiness and non-slipperiness. Mr. Holland also points out that the flat surface of the threshold was without grooves or indentations, which would have provided slip resistance, and, furthermore, that fluted types of thresholds (not flat surface thresholds) are recognized as acceptable for anti-slip purposes. Thus, while Defendant's arguments may address possible deficiencies in Mr. Holland's supporting evidence, they do not affect its admissibility. The weight to be assigned to an expert opinion is for the jury to determine in light of the expert's credentials and the factual basis of his opinion. *Wiegman*, 721 N.E.2d at 623. Therefore, Defendant's Motion to Strike is denied.

¶ 6.) Although there may not be liability if Defendant had a floor of common accepted design, as the case law shows, some slight direct evidence of a defect in flooring is enough to send the case to a jury. *Tracy*, 451 N.E.2d at 997. In the case *sub judice*, Mr. Holland's expert testimony provides evidence which raises issues of material fact, namely, whether the location of the peditred and the course of tile used presented an unreasonably dangerous condition - questions which are undisputedly for a jury.

In addition to proving unreasonable danger, for a plaintiff to survive summary judgment, under Illinois law, a plaintiff must show that the defendant had actual or constructive knowledge of the condition, and failed to take a reasonable precaution to avoid injury to its patrons. *Bloom*, 710 N.E.2d at 123-124. To prove constructive knowledge, Plaintiffs rely on the testimony of two of Defendant's employees, Jacoby Richardson and Kimberly Walls. Ms. Walls stated that runners, from the threshold of the door to some point well inside the store, and yellow caution signs were usually in place, and were in place on the day of the accident. (DKW at 14-17.) Mr. Richardson stated that these runners and signs were usually in place, especially on wet days, because of the slipperiness. (DJR at 30-33.)

Plaintiffs allege that, since the runners and yellow caution signs were (at least) normally in place, Defendant was aware of the unreasonable risk of danger at the entrance to the store premises. As discussed *supra*, constructive knowledge is a question of fact for a jury to decide.[4] For these reasons, Plaintiffs argue that Defendant's Motion for Summary Judgment should be denied.

## D. Defendant's Motion for Summary Judgment

Defendant's Motion presents three primary arguments. First, Defendant claims that Plaintiffs have not established the cause of Mr. Lee's fall, and, therefore, cannot prove that the peditred was the proximate cause of his fall. Second, Defendant argues that, contrary to Plaintiffs' contention, case law has indicated that Defendant has no duty to provide an additional mat to cover the tile between the threshold of the door and the peditred. Third, Defendant argues that it is not liable for any injuries on its premises resulting from the natural accumulation of water. Each of these arguments is addressed in turn.

---

[4] In addition, as addressed *supra*, there is a dispute concerning whether the runners were in place on the day of Plaintiff's fall. Again, this is a question of fact for a jury.

1.   Peditred as Proximate Cause

Defendant's first argument is that in order to prove negligence, Plaintiffs must be able to establish proximate cause. *Kimbrough v. Jewel Companies, Inc.*, 416 N.E.2d 328, 332 (Ill. App. Ct. 1981) (stating that a plaintiff must know the cause of her fall).  Proximate cause can be established only when there is a reasonable certainty that the defendant's act caused the injury. *Wiegman*, *supra*, 721 N.E.2d at 620. However, it is not essential that causation be shown by direct evidence. *Id*.  Causation may be established by facts and circumstances which, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury. *Id*.

Defendant erroneously relies on *Kimbrough*, *supra*, and other similar cases to argue that Plaintiff failed to establish proximate cause.  However, these cases are easily distinguishable.  In *Kimbrough*, the court held that, because a causal connection could not be established between the plaintiff's fall and any condition under the defendant's control, summary judgment was proper. 416 N.E.2d at 332.  In fact, in *Kimbrough*, the plaintiff admitted she did not know the reason for her fall. *Id*.  In *Vance v. Lucky Stores, Inc.*,

480 N.E.2d 167 (Ill. App. Ct. 1985), the appellate court found that there was no evidence of what caused the plaintiff's fall, and, therefore, the trial court properly granted a directed verdict for the defendant. *Id.* at 169-70. In *Vance*, it was significant that the plaintiff did not observe any substance in the area that caused her to fall, and she did not know why she fell. *Id.*

Significantly, these cases can be distinguished from cases in which a plaintiff points to a specific defect as the proximate cause of his injuries. For example, in *Canzoneri v. Village of Franklin Park*, 513 N.E.2d 1103 (Ill. App. Ct. 1987), where the plaintiff testified that she fell when a piece of broken sidewalk moved under her feet, in reversing a summary judgment order, the appellate court distinguished *Kimbrough* and similar cases, finding that in those cases the "lack of an identifiable defect" was the determinative factor, while in the case before it, the plaintiff specifically pointed to a defect that she claimed had caused her to fall. *Id.* at 1107-1108 . Similarly, in *Bellerive v. Hilton Hotels Corp.*, 615 N.E.2d 858 (Ill. App. Ct. 1993), the plaintiff fell while descending a flight of stairs, and testified in her deposition that, as she stepped down, she felt that her foot

was not quite level and she fell. *Id.* at 859. In reversing summary judgment, the reviewing court found that the plaintiff's testimony was enough to indicate that the uneven stair was the cause of her fall. *Id.* at 861.

Likewise, the *Wiegman* court, distinguishing *Kimbrough* and its progeny, stated that the plaintiff fell directly in the water on the tile floor with her body positioned in a manner indicative of a slip, and her testimony established that she did not trip. 721 N.E.2d at 622-623. In addition, two witnesses testified that the floor all around the plaintiff was wet. Furthermore, the plaintiff's expert testified that the flooring in that area was not of a non-slip nature. *Id.* The *Wiegman* court found such facts to be distinguishable, because, in *Kimbrough*, the plaintiff did not know the cause of her fall. *Id.*

In the case *sub judice*, Defendant claims that Plaintiffs do not know what caused Mr. Lee's fall and, therefore, cannot prove the proximate cause of his fall or resulting injuries. Defendant also states that Plaintiffs are trying to establish that the peditred was a cause of Mr. Lee's fall, and, since Plaintiffs do not claim that Mr. Lee actually tripped over the peditred, then the peditred cannot be the cause of his fall.

However, Defendant grossly mischaracterizes Plaintiffs' theory of proximate cause. Plaintiffs do not argue that Mr. Lee tripped over the peditred. Rather, Plaintiffs argue that the *location* of the peditred resulted in an unreasonably dangerous condition at the entrance to Defendant's premises. Also, contrary to Defendant's assertion, Plaintiffs do, indeed, have an idea as to what caused Mr. Lee's fall. Plaintiffs state that the location of the peditred, and the course of tile used at the doorway, resulted in an unreasonably dangerous condition, which caused Mr. Lee to fall. (Plaintiffs also allege that there was tracked-in water that contributed to the unreasonably dangerous condition.) Thus, Defendant's first argument fails, because Plaintiffs point to specific defects (taken together) that allegedly constitute proximate cause of Mr. Lee's fall, and as *Canzoneri*, *Bellerive*, and *Wiegman* illustrate, such evidence is enough to withstand summary judgment.

## 2. Duty to Provide Additional Mats at Entrance

Defendant further argues that Defendant has no duty to provide an additional mat to cover the tile between the threshold of the door and the peditred, and, therefore, that Plaintiffs' third claim of negligence - that Defendant failed to have in place an additional mat, usually present in wet

conditions, to cover the tile between the threshold and the peditred – must fail. However, Plaintiffs bring forth enough evidence to survive summary judgment, which shows that Defendant does have a duty to make the premises safe for business invitees.

Defendant relies on the distinguishable case, *Roberson v. J.C. Penney Co.*, 623 N.E.2d 364 (Ill. App. Ct. 1993), to argue that it did not have an obligation to provide the additional mat. In *Roberson*, the plaintiff claimed that J.C. Penney had a duty to remove tracked-in water that had accumulated at the entrances to the store. *Id.* at 365. The court held that J.C. Penney's duty extended only to maintaining the mats that it had already installed, and that J.C. Penney had no duty to install as many mats as necessary to absorb tracked-in water. *Id.* at 366.

However, in the case *sub judice*, Plaintiffs are not merely arguing that the duty to provide mats was due to the unsafe but natural accumulation of water at the entrance to Defendant's premises. Rather, Plaintiffs argue that the duty to provide additional mats arose due to the unreasonable risk of danger, which Defendant had knowledge of, created by the poor location of the peditred, and by the inappropriate course

of tile used at the entrance to Defendant's premises.[5]

In sum, Defendant argues that there is no duty to provide additional mats at the entrance. This argument is based on case law – such as *Roberson* – that shows there is no obligation to remove or take precautions against natural accumulations of water at the entrance to a business owner's premises (an argument that is addressed in more detail *infra*). However, in the case at bar, Plaintiffs are not arguing that the duty to provide additional mats arose due to natural accumulations of water at the entrance to the premises. Rather, Plaintiffs argue that the duty to provide additional mats at the entrance arose due to Defendant's constructive knowledge of an unreasonably dangerous condition, created by the defective location of the peditred and by the

---

[5] While Plaintiffs concede in their Opposition Motion that the absence of the mats on the day in question does not provide an additional basis for liability, Plaintiffs argue that Defendant's habitual use of the additional runners and the yellow caution signs, especially in times of inclement weather, establishes constructive notice, by Defendant, that the area between the threshold and the peditred was slippery, and, therefore, presented an unreasonably dangerous condition for business invitees. The Court agrees that the alleged absence of the runners on the day of the accident does not support a separate assertion of liability but, instead, supports Plaintiffs' overall theory concerning constructive notice and an unreasonably unsafe environment.

inappropriate tile used at the entrance to the premises (that became exacerbated when wet). As the case law shows, a business owner has a duty to make the premises reasonably safe for business invitees.

### 3. The Natural Accumulations Rule

Finally, Defendant argues that it has no liability for any injuries on its premises resulting from the natural accumulation of water. Under Illinois law, a landowner, generally, has no liability for injuries resulting from natural accumulations of ice, snow, or water tracked onto its premises (otherwise referred to as the "natural accumulations" rule). *Bernard v. Sears, Roebuck & Co.*, 519 N.E.2d 1160, 1161 (Ill. App. Ct. 1988); *Bloom, supra*, 710 N.E.2d at 123. Since owners are not liable, they have no duty to remove the tracks or residue from rain left by customers, or to warn of such accumulations. *Nieves v. U.S.*, 980 F. Supp. 1295, 1297 (N.D. Ill. 1997) (citation omitted). Therefore, according to Defendant, since the water on the floor of the premises was "natural", it had no duty to take precautions.[6]

--------------------------------------------------

[6] A landowner does, however, have a duty and, therefore, may be liable, where injuries occur as a result of an unnatural or artificial accumulation of ice and snow, or a

(continued...)

However, there are exceptions to the "natural accumulations" rule, because property owners have a duty to provide a reasonably safe means of ingress and egress from their place of business, and this duty is not abrogated by the presence of a natural accumulation of ice, snow, or water. *Branson v. R & L Inv., Inc.*, 554 N.E.2d 624, 628 (Ill. App. Ct. 1990). Significantly, courts which have applied the "natural accumulations" rule have often noted an exception, where a store owner, who generally has no duty to remove tracked-in water, can be liable if the plaintiff specifically alleges that the material used in the flooring is especially slippery and dangerous when wet. *See, e.g., Buscaglia v. United States*, 25 F.3d 530 (7th Cir. 1994) (recognizing exception that the composition of the floor, either by itself or in combination with an accumulation of water, could be basis for liability); *Lohan v. Walgreens Co.*, 488 N.E.2d 679,

---

⁶(...continued)
natural condition aggravated by the owner. *Bernard*, 519 N.E.2d at 1161-1162. The only credible evidence in the case *sub judice* indicates that the water was "natural" and, probably, tracked- in from outside during inclement weather. Nonetheless, as discussed *infra*, there is an exception to the "natural accumulations" rule, where the flooring may become unreasonably dangerous when wet, and the Court finds that Plaintiffs' allegations fall under that exception.

681 (Ill. App. Ct. 1986)(finding that store owners had no duty to remove tracked-in rainwater, absent allegations that materials used in the floor were particularly slippery and dangerous when wet); *Fanning v. LeMay*, 222 N.E.2d 815 (Ill. App. Ct.)(reversing, *inter alia,* dismissal of count alleging that asphalt tile became very slippery and dangerous when wet), *rev'd in part on other grounds*, 230 N.E.2d 182 (1967); *Sommese v. Maling Bros., Inc.*, 222 N.E.2d 468, 470 (1966)(finding that whether store owner knew or should have known that outside terrazzo floor became slippery and dangerous when wet was question for jury).[7] Therefore, in the case *sub judice,* it is a question for the jury to decide if Defendant knew or should have known of the dangerous condition of the premises when wet, and if so, whether Defendant failed to warn Mr. Lee of the condition.

In order to create a material fact issue as to whether a floor is unusually slippery and dangerous when wet, a

---

[7] While *Sommese* and *Fanning* are cases from the 1960s, their holding that the "natural accumulations" rule has an exception for allegations that the flooring was particularly dangerous and slippery when wet, has been reaffirmed in more recent cases. *See, e.g., Buscaglia, supra* (citing *Sommese*); *Lohan, supra* (citing *Fanning*); *Nieves v. U.S.*, 980 F. Supp. 1295, 1298 (N.D. Ill. 1997)(recognizing exception and citing both *Sommese* and *Fanning*).

plaintiff must present evidence through depositions, affidavits, and admissions to support the allegations. *Richter v. Burton Inv. Properties, Inc.*, 608 N.E.2d 1254, 1257 (Ill. App. Ct. 1993). In *Richter*, the court granted summary judgment because the plaintiff did not introduce evidence to support the allegation that the entrance of the premises, where the plaintiff slipped, was negligently constructed (i.e. specifically, dangerous and slippery when wet). *Id.* at 1257. Significantly, the *Richter* court found *Sommese* distinguishable, because, in *Sommese,* the plaintiff's presentation of the testimony of an expert witness, that the tile floor was unreasonably slippery and dangerous when wet, was sufficient evidence to support the plaintiff's allegations and, therefore, to deny summary judgment.[8] *Id.* at 1257-58.

Although Plaintiffs failed to address the "natural accumulations" rule in their Opposition Motion (and did not even point out the exception, which applies to them), the

---

[8] Similarly, in *Buscaglia*, the Seventh Circuit found a bare allegation of undue slipperiness insufficient to withstand summary judgment, but found that an affidavit of an expert, who tested a floor sample, created a material fact issue as to whether the floor was unusually slippery and dangerous when wet. 25 F.3d at 534-535. In the case at bar, Plaintiffs have also provided expert testimony that the floor was unreasonably dangerous when wet.

Court finds that the allegations in Plaintiffs' Complaint, and the evidence they have accumulated thus far, justifies the exception to the "natural accumulations" rule. Plaintiffs essentially argue that the location of the peditred, and the course of tile used, created an unusually slippery and dangerous condition when wet – thus, implicating the exception to the "natural accumulations" rule. Plaintiffs have presented sufficient evidence – consisting mainly of expert testimony – to fall under this exception.

### CONCLUSION

Accordingly, for the reasons set forth above, the Court finds that there are genuine issues of material fact in dispute regarding whether the location of the peditred created an unreasonably dangerous condition, whether the tile used at the entrance was inappropriate and thus created an unreasonably dangerous condition, whether additional mats were used on the day in question, and whether there was constructive knowledge of a known danger for which Defendant can be held liable.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, DENIED.

Dated:  May 31, 2001      ENTER:

ARLANDER KEYS
United States Magistrate Judge